Continental Supermarket Food Service, Inc., to use, *v.* Soboski et ux., Appellants.

Argued March 22, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*John P. Yatsko,* with him *Fitzgerald & Yatsko,* for appellants.

*Ronald Robinson,* with him *Pearlstine, Salkin & Hardiman,* for appellee.

OPINION BY SPAULDING, J., June 20, 1967:

On October 3, 1962, defendants entered into an agreement with Continental Supermarket Food Service, Inc., for the purchase of a food freezer plan. They executed two judgment notes and a security agreement. On October 15, 1962, judgment was entered on one note in the amount of $1747.20 and it was assigned of record on January 9, 1963 to Commercial Banking Corporation, use-plaintiff. In the interim, defendants made one payment of $91.00 to Continental. Subsequently, Continental went out of business.

Execution was issued by the use-plaintiff and the court granted defendant's motion to open the judgment. A jury trial followed and the court directed a verdict in favor of Commercial. Testimony disclosed the food plan required Continental to supply defendants with "deluxe home delivery" of frozen food at discount prices and a food freezer. At the end of four years of monthly payments, the freezer was to belong to defendants "at no additional charge". Defendants testified the first two food shipments were in unrefrigerated vehicles and the food was in a "thawed condition". Subsequently, much of the food appeared slimy and discolored, had an offensive odor, and was not palatable. In December 1962, defendants stopped

payments, refused to accept further shipments of food, and requested the freezer be removed.

In directing a verdict, the trial court concluded the obligation to purchase the freezer was severable from the agreement to purchase food and defendants' evidence of failure of consideration with respect to the food shipments was not a defense to the action on the promissory note. Defendants contend the obligation was not severable and failure of the food is a defense.

In determining whether a contract is entire or severable, the primary inquiry is whether the language employed in the contract clearly indicates the intention of the parties. Absent such clear indication, we are obliged to seek additional aids. *Heilwood Fuel Co., Inc. v. Manor Real Estate Company*, 405 Pa. 319, 175 A. 2d 880 (1961); *Producers Coke Company v. Hillman*, 243 Pa. 313, 90 Atl. 144 (1914). Since the promissory note, the instrument in suit, does not recite the consideration for which it was given, reference must be made elsewhere to determine intent.

The document which most strongly indicates the intention of the parties is titled "Customer's Contract Verification for Food and Freezer" and was executed on November 22, 1962 by Mrs. Soboski and Joseph Demetrius, an authorized representative of Starr Foods, Inc.[1] It is set forth below.

CUSTOMER'S CONTRACT VERIFICATION
FOR FOOD AND FREEZER

I UNDERSTAND [sic] HAVE RECEIVED THE FOLLOWING:

1. The total payment for the food program, all Company services plus a freezer will be approximately $91.00 per month for the first 6 months.

2. I understand that my monthly Company services including freezer payments will be $36.40 for 48

---

[1] There was uncontradicted evidence that the same persons operated Starr Foods and Continental.

months and that my food payments will be approximately $54.60 per month for the first 6 months, adding up approximately to the sum indicated in paragraph 1.

3. I understand that the total cost of the freezer including Supermarket Program and all services is $1747.20.

4. I understand that my food and Company services plus freezer may be financed and paid for separately but that the total of both for the first 6 months will be the amount indicated in paragraph 1.

5. I understand that my food program including freezer are being financed.

6. I understand that this service is not on a trial or rental basis.

7. I have read and received a copy of the Conditional Sales Contract covering the freezer program.

8. I understand that should I purchase less food on my next order or any subsequent reorders, my payments will be less; or should I order more food on my next or subsequent orders, my payments will be proportionately larger. I may order what, when and how much of food products for sale by the Food Co., that I want, with equal quality, equal service and equal quantity discount prices.

9. I understand that at the end of the 48 month period, providing my payments have been met, the freezer belongs to me AT NO ADDITIONAL CHARGE.

THERE ARE NO ORAL OR WRITTEN REPRESENTATIONS WHICH CAN CONFLICT WITH THE ABOVE.

DATE 11/22/62

J. R. Demitrius (signed)
*Authorized Representative*
*Starr Foods, Inc.*

x Mrs. Teresa Soboski (signed)
*Customer's Signature & Ac-*

*knowledgement of Receipt of
copy of the Verification*
219 Oxford Circle
Jeffersonville, Pa.
*Address*

We note that the title refers to a single contract for the food and freezer; paragraph 1 refers to "total payment for the food program"; paragraph 5 refers to a "food program including freezer"; and paragraph 7 refers to "the freezer program". From this document, a jury could conclude the agreement to purchase the food and freezer was considered to be a single package.

Other materials placed in evidence support this conclusion. A paper, bearing Continental's letterhead and signed by defendants and Continental's representative, contains the heading "All Supermarket Facilities Listed Below—Including Refrigeration." It enumerates the goods and services to be provided together with the payments to be made. "Deluxe Home Delivery of All Products" is grouped with "Refrigeration" and consideration is lumped together under the heading "All Supermarket Facilities and Food Total Cost Per Month."

A form letter prepared by Commercial Banking Corporation dated November 23, 1962 and signed by defendants states: "The undersigned acknowledges that he has been making payments on this obligation for a *completed and satisfactory contract for freezer and food plan. . . ."* (Emphasis added.) Consideration for the food and freezer is lumped together throughout.

In the "Security Agreement" of October 3, 1962 between defendants and Continental, the freezer is the property secured. This does not compel the conclusion that the parties considered the freezer and food to be independent transactions. Rather, it is more likely that they intended Continental should retain, for its

own protection, a security interest in the only nonperishable item—the freezer—until the installment payments had been completed.

"Whether a number of promises constitute one contract or more than one is to be determined by inquiring 'whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.'" *United States v. Bethlehem Steel Corporation*, 315 U.S. 289, 298, 62 S. Ct. 581 (1942). "If the purpose of the parties was to take the whole or nothing, the contract would be entire. . . ." *Byren & Weil, Inc. v. French & Keeley, Inc.*, 103 Pa. Superior Ct. 573, 577, 157 Atl. 367 (1931).

On a motion for a directed verdict, the facts must be considered in the light most favorable to the party against whom the motion is made. See *Lescznski v. Pittsburgh Railways Company*, 409 Pa. 102, 185 A. 2d 538 (1962); *Lear v. Shirk's Motor Express Corporation*, 397 Pa. 144, 152 A. 2d 883 (1959). ". . . [T]he court must accept as true all the evidence of that party which supports his contention . . . and must reject all the adverse testimony of the party seeking a directed verdict." *Lott v. Guiden*, 205 Pa. Superior Ct. 519, 523, 211 A. 2d 72 (1965).

There is substantial evidence to show that the parties regarded the sale and purchase of the food and freezer as one transaction. The food was an integral part of the contract and nothing indicates the defendants would have entered into an agreement for the freezer alone. A jury could reasonably conclude the contract was entire and failure to provide the food was a proper defense.

Judgment reversed and new trial granted.