398 A.2d 699

Alvin G. TURLEY, Appellee—Nos. 717 & 719,

v.

Bruce A. KOTTER, Appellee—No. 717, Appellant—No. 719,

v.

HENNIS FREIGHT LINES, INC., Appellant—No. 717, Appellee—No. 719.

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Decided Feb. 28, 1979.

524

William R. Tighe and with him Scott E. Becker, Pittsburgh, for appellant at No. 717 and appellee at No. 719.

Theodore O. Struk and with him David M. Neuhart, Pittsburgh, for appellant at No. 719 and appellee at No. 717.

James A. Mollica, Jr., Pittsburgh, for appellee Alvin G. Turley.

Before PRICE, HESTER and WATKINS, JJ.

WATKINS, Judge:

These appeals are from the order of the Court of Common Pleas of Allegheny County, Civil Division, after a verdict of $9,000.00 rendered in favor of the plaintiff-appellee, Alvin G. Turley.

Plaintiff, Alvin Turley, is the owner of a tractor-trailer and brought this action against the defendant, Bruce A. Kotter, to recover the amount required to repair his tractor-trailer after it was involved in an automobile accident on January 29, 1971, with a vehicle being operated by one Robert F. Wahl. The Wahl vehicle had crossed over into the opposite lane of traffic and collided with the tractor-trailer after having been struck by a vehicle operated by Kotter. At the time of the accident plaintiff's tractor-trailer was being operated by one McKinley. In a previous suit brought by the estate of a person in the Wahl vehicle the jury rendered a verdict holding Kotter, McKinley and Hennis Freight Lines, McKinley's employer, liable. In the instant case, Kotter joined Hennis as an additional defendant.

After the conclusion of the testimony, the trial court granted plaintiff's request for binding instructions removing

the liability issue, from the jury. At first the court refused plaintiff's request but then reconsidered after oral argument of the parties' counsels to the jury and granted plaintiff's request. The court then directed a verdict against both defendants on the issue of liability.

█ Since the negligence of McKinley, the operator of the tractor-trailer, Kotter, and Hennis was admitted as a result of the first trial involving the passenger in the Wahl vehicle the only issues at this trial were: (1) the amount of damages; and (2) the question of whether McKinley was a servant of Turley. If he was a servant of the plaintiff then his contributory negligence, imputed to plaintiff via the respondeat superior doctrine, would have barred recovery against the defendants by plaintiff, as the negligence of a servant or employee acting within the scope of his employment will bar recovery by the master or employer from a negligent third party. *Von Cannon v. Philadelphia Transportation Co.*, 148 Pa.Super. 330, 25 A.2d 584 (1942).

█ The record reveals that in 1971 the plaintiff was the operator of a service station, a mechanic, and the owner of five tractor-trailers. Plaintiff's tractor-trailers were leased to Hennis pursuant to a written lease agreement dated July 16, 1969. Hennis was a shipper engaged in transporting freight in interstate commerce. Section B of the lease provided: "During the term of this lease, the leased equipment shall be in the sole and exclusive possession and control of the LESSEE". Section H. of the lease provides: "The equipment which is the subject of this lease shall be driven by an employee of the LESSEE at all times that it is in the service of the LESSEE . . ." "The LESSEE expressly reserves the right to control the manner, means and details of, and by which the driver of such leased equipment performs his services, as well as the ends to be accomplished . . ." (Emphasis added) The record also reveals that it was Hennis which hired McKinley, which chose the routes over which McKinley would travel, and which retained the right to discharge McKinley. There is no question as to McKinley's relationship to Hennis as it is apparent that he

was Hennis' servant. However, appellant contends that, even though McKinley was Hennis' servant, that because of the control plaintiff had over McKinley that McKinley was also plaintiff's servant. In determining the propriety of a directed verdict, all the facts adduced at trial must be considered in the light most favorable to the party against whom the motion was made. *Cox v. Equitable Gas Co.,* 210 Pa.Super. 304, 232 A.2d 216 (1967). Therefore for purposes of this appeal we must accept as true all facts and proper inferences therefrom which support appellant's contentions, which is that McKinley was plaintiff's servant.

"Agency" is the relationship which results from the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. *Chalupiak v. Stahlman,* 368 Pa. 83, 81 A.2d 577 (1951). A "Master" is a principal who employs an agent to perform a service in his affairs and who controls or has the right to control the physical conduct of the agent in the performance of the service. A "servant" is an agent employed by a master to perform a service in his affairs whose *physical conduct,* in the performance of the service is controlled or is subject to the right to control by the master. *Restatement (Second), Agency 32(1) and 2(2).* A master controls and may direct the manner in which work is done. He, therefore, controls more than merely the result of the work. A servant, in rendering the service, remains entirely under the control of the master. *Joseph v. United Workers Association,* 343 Pa. 636, 23 A.2d 470 (1942). Because a master has the right to exercise control over the physical activities of the servant within the time of service, he is vicariously liable for the servant's negligent acts committed within the scope of his employment. Therefore, the master is likewise barred from recovery against a negligent defendant by the contributory negligence of his servant acting within the scope of his employment. *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970). A person rendering a service but retaining control over the manner of doing it is not a servant. He may be an agent, agreeing only to

use, care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal. Only the master-servant relationship gives rise to vicarious liability for negligence in automobile accident cases. *Smalich v. Westfall, supra.* Appellants contend that because plaintiff alleged that McKinley was his "agent" in his Complaint that he is bound by that admission and that this bars him recovery. The foregoing discussion distinguishes between an "agency" and a "master-servant" relationship and since plaintiff would be barred from recovery only if a master-servant relationship existed between he and McKinley his allegation in his Complaint that McKinley was his "agent" is not determinative of this issue.

Therefore, we must determine whether sufficient indicia of plaintiff's control over McKinley was adduced so as to have enabled a finder of fact to hold that McKinley was plaintiff's servant. Appellants cite certain facts which they claim created a master-servant relationship between Turley and McKinley. The lease which provided for the method by which each party's compensation was to be determined stated that the owner's share was to be 72% of gross revenue on shipments transported on owner's equipment. The gross earnings of the driver and all fringe benefits due to the driver were to be deducted from the 72% gross revenue and the difference paid to owner as equipment rental. Therefore plaintiff's compensation was directly linked to the efficiency of the driver's performance. However, this situation does not establish that plaintiff had control over the driver. In many instances the performance of a servant of a party to a contract will have a direct bearing on the profits made by the other party to a contract. This does not establish a master-servant relationship between the employee and the other party to the contract. We must also note that in this case it was Hennis which paid both plaintiff and McKinley after computing their respective shares. We conclude, therefore, that this fact does not support appellants' conclusion that McKinley was plaintiff's servant.

■ Appellants also point out that the lease provided that plaintiff had the obligation of providing license plates for the vehicles, servicing and maintaining the vehicles, paying all fines and penalties imposed on the drivers, providing collision, fire, and theft insurance on the vehicles, and paying for all road expenses such as fuel, tires, repairs and road tolls. At first glance these factors appear to support appellant's contention that plaintiff had control over McKinley. However, upon further reflection it is apparent that these obligations of plaintiff were more clearly connected to the vehicles themselves rather than the operators of the vehicles. Although plaintiff did have the right under the contract to insist that the drivers obtain fuel from him when in his area and when not in his area to obtain fuel elsewhere at the least cost, we do not find that such a provision in the agreement placed plaintiff into a position where a master-servant relationship between he and McKinley was created because said provisions do not manifest the requisite control of McKinley by plaintiff. Therefore we hold that taking all of the facts submitted by appellants at trial as true that there would still not be sufficient facts to send this matter to the jury on the issue of whether there existed a master-servant relationship between plaintiff and McKinley especially in light of the fact that plaintiff was never engaged in the business of shipping freight but was merely the owner of five tractor-trailers which he leased to others, the terms of such leases providing that the lessee was to have control over the operators of the vehicles and it was Hennis which carried the Interstate Commerce Commission license to ship goods.

■ Appellants allege that the trial court erred when it refused to permit Hennis to offer evidence into the record as to what control other brokers with which Hennis dealt had over the drivers. The purpose of the question as argued upon appeal was to establish the custom or usage in the industry. Evidence tending to show how a particular industry interprets various parties' rights under an agreement may be relevant and material in an action involving some

claim or liability arising out of such industry. Evidence which is irrelevant to the issues or *insufficient* to prove a course of business is inadmissible for the purpose. *31(A) C.J.S. 457–458, § 180 Evidence.* (Emphasis ours) In our case the evidence offered by Hennis was not sufficient to prove the custom or usage of the industry as the testimony so adduced came from an employee of Hennis itself and merely would have shown how Hennis interpreted other contracts it had with other owners and would not have tended to show the custom or usage of the industry. Therefore, the testimony offered by Hennis amounted to nothing more than self-serving hearsay and any probative value it would have had was outweighed by the self-serving nature of the testimony. For this reason we hold that the court below was correct in refusing to admit such testimony.

Finally appellants argue that the court below erred when it allowed appellant's counsel to argue the question of liability to the jury then, after reconsidering the original motion of plaintiff for a directed verdict on the issue of liability, granted plaintiff's motion. Appellants argue that this ruling reduced their credibility in the eyes of the jurors on the issue of damages and therefore denied them the right to argue effectively before the jury. Argument is part of the constitutional right to representation by an attorney in civil cases and no court may deny a party's counsel the right to argue its case before a jury. See *Hestor v. George,* 354 Pa. 19, 46 A.2d 469 (1946). The record reveals that appellants' counsel did indeed argue before the jury. The question is whether the court's removal of the liability issue from the jury after oral argument of counsel so prejudiced the appellants' positions so that the jurors could not render a fair verdict on the issue of damages. It was suggested to the court that it charge the jury on both the issue of liability and the issue of damages and submit special interrogatories to the jury; one on the issue of the master-servant relationship and one on the issue of damages. Then the court could have issued the directed verdict on the liability (master-servant) issue if the jury had found for

defendants on it. Thus, the damages issue would have been protected from any credibility taint due to the directed verdict on the liability issue. While this procedure may be desirable in some situations it is questionable as to whether it may have unduly confused the jury here. We have reviewed the charge of the court and find it to be fair. We note that one of the appellants points for charge relative to plaintiff's failure to bring his books and records into court holding that such failure created a presumption that said books and records would have been unfavorable was granted and the jury so charged. Even if the appellants' suggested procedure for handling this problem was more desirable than that engaged in by the trial court, this does not mean that the court below committed reversible error here. Since the charge was fair we hold that the court did not commit reversible error here.

Order affirmed.