DUVERGEE, INC., Plaintiff

v.

GOVERNMENT OF THE VIRGIN ISLANDS and HERMAN RICHARDSON, in his capacity as Commissioner of Property and Procurement, THE VIRGIN ISLANDS COMMISSION ON AGING, and GLORIA KING, in her capacity as Executive Director of the Commission on Aging, Defendants

and

MARRIOTT IN FLITE SERVICES, INC. and HUGHSONS, LTD., Intervenors

Civil No. 28/1986

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 13, 1986

IVER A. STRIDIRON, ESQ., St. Thomas, V.I., *for plaintiff*

KARL PERCELL, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

FREDERICK G. WATTS, ESQ., St. Thomas, V.I., *for Intervenor Marriott In Flite Services, Inc.*

ROBERT J. AMBROGI, ESQ., St. Thomas, V.I., *for Intervenor Hughsons, Ltd.*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

## I. INTRODUCTION

After an initial denial of plaintiff's motion for a Temporary Restraining Order, a Permanent Injunction was issued herein in favor of plaintiff as the lowest effective bidder to supply meals for the Commission on Aging. Subsequently, motions to intervene as

defendants were filed by Marriott In Flite Services, Inc. (Marriott) and Hughsons, Ltd. (Hughsons). The motions to intervene were granted and the intervenors filed motions to dismiss for lack of subject matter jurisdiction. Thereafter, defendant Government of the Virgin Islands (Government) also filed a similar motion to dismiss, after having filed its Notice of Appeal.

This matter is before the court on these motions to dismiss. Specifically, the movants contend that the value of the prospective contracts exceed the $200,000 jurisdictional limitation of this court. In opposition, plaintiff contends that the issue is not one of contract but one of bidding procedure, subject to the court's equitable jurisdiction, and that even if a contract was in issue, it is divisible, thereby falling within the $200,000 civil jurisdiction of the Territorial Court.

After presentation of testimony and arguments of counsel, the motions were taken under advisement and all parties were afforded the opportunity to file post-hearing briefs, which have been received and considered, along with the further research of the court. For the reasons which follow, the court will deny the motions to dismiss.

## II. FACTS

On November 12, 1985, prior to the filing of the case at bar and based on a previous bid award and supply contract, plaintiff filed an action for injunctive and declaratory relief in the District Court of the Virgin Islands against the same Government defendants (Dist. Ct. Civ. No. 85-391). In that still-pending action, plaintiff sought enforcement of a written contract which required plaintiff to prepare and deliver 95,000 meals for defendant Commission on Aging (Commission) payable by defendant Government in the sum of $460,000. Plaintiff further alleged that of the 95,000 meals contracted for, defendant Commission refused to order 26,699 meals, although plaintiff was ready, willing and able to perform. Plaintiff therefore sued to obtain, among other things, payment for the unordered meals. Plaintiff sought enforcement in the District Court because the contract amount exceeded the $200,000 limitation of the Territorial Court. In answering to plaintiff's District Court complaint, the Government defendants contended that the amount in controversy did not exceed $200,000. They also denied liability, claiming that they did not intend to be obligated to pay plaintiff for any meals which were not ordered, despite the total

meals estimated in the contract. Because the language of that contract did not specifically relieve them of liability for unordered meals, the Government defendants changed the language of the new invitation to bid, which is the subject of the case at bar. The new language unequivocally excludes any obligation by the Government to pay for meals until and unless the meals are ordered, prepared, accepted, and delivered.

Specifically, the new language provides, inter alia, as follows:

QUANTITY

Separate quotations will be considered for the provisions on [sic] individually packaged, nutritionally sound meals which meet the 1/3 Recommended Daily Dietary Allowances. The estimated number of meals are as follows:

St. Thomas ...................................................... 60,000 meals
St. Croix ......................................................... 57,000 meals

Provider should be willing to negotiate a decrease in price per meals for each fifty (50) meal increase in the number of meals for the duration of such increase. *Of the total number of meals estimated above, the Nutrition Program for the Elderly will only pay for those meals ordered, prepared, accepted and delivered.* Of the estimated number of meals requested on this bid, the Commission on Aging reserves the right to order a minimum of 55,000, maximum of 65,000 meals on St. Thomas, minimum of 54,000, maximum of 60,000 meals on St. Croix, during the Fiscal Year 1986 without penalty. (Emphasis added.)

Plaintiff's Exhibit M1 at P. 2.

On January 10, 1986, plaintiff filed this action seeking injunctive relief here in the Territorial Court, regarding the validity of the bid·award for the current period. Plaintiff alleged that defendant Herman Richardson wrongfully awarded bids to provide meals for the elderly, through the Commission on Aging, to Marriott on St. Croix and Hughsons on St. Thomas. Plaintiff had submitted bids to service both islands and alleged that by virtue of its status as the only preferred bidder, it was the lowest effective bidder, among all three bidders, and should have been awarded the bid for both islands.

Additionally, plaintiff alleged that although defendant Richardson was aware of the fact the Hughsons, Ltd., had neither a qualified nutritionist nor dietician on staff, and as a result would be unable to perform in accordance with the requirements expressly specified in the invitation to bid, he still awarded the St. Thomas bid to Hughsons. In opposition the Government contended that because federal funds were involved, the preferred bidders law was not applicable.

No contract was entered into between plaintiff and the Government at the time of the hearing on the Injunction, the only question being the validity of the bid awards. At the consolidated hearing of the Preliminary Injunction and the Permanent Injunction, the court found that the federal rules authorized the use of local laws in the circumstances of this case and that the preferred bidders law was in fact applicable, that plaintiff was the only preferred bidder, and that as such, it had submitted the lowest effective bids, and therefore should have been declared the successful bidder. Thus, the Permanent Injunction was granted in favor of plaintiff.

During the hearing on the motions to dismiss, the Government defendants admitted that the change in the language of the invitation to bid was intended to eliminate any obligation on their part to pay for any meals that were not ordered, prepared, accepted, and delivered. They further admitted that they could only place their orders for meals one day in advance of the date of delivery, but would process the bills for payment of the meals on a monthly basis. They also admitted, consistent with their representation in the District Court case, that they did not consider this bid award to exceed the $200,000 jurisdictional limit of the Territorial Court, and that their reservation of the right to order a minimum or maximum number of meals was not an obligation to do so, but was merely discretionary.

Plaintiff agreed with the Government defendants, as did the representative for Marriott, that based on the contract and past experience with the Commission on Aging they could not determine the maximum or minimum value of the contract until the contract period had expired. No evidence was submitted which contradicted the factual admissions of the Government defendants, but the intervenors have opposed the government's interpretation of the language of the bid documents regarding the question of jurisdiction based on the number of meals estimated and their projected valuation.

Although the invitation to bid, which was admitted into evidence during the injunction hearing as Plaintiff's Exhibit #1, contained no monetary valuation for the services to be rendered, the bidders submitted their chargeable costs per meal, which when multiplied by the estimated number of meals gave a projected valuation for each island in excess of $200,000, subject to the other terms and conditions of the bid documents. This was consistent with the Intervenors' bids (Exhibits MM2 & HM2) which were admitted during the motion hearing and which showed on their face a projected valuation in excess of the jurisdictional limit of this court.

No objection to the new language of the bid documents was made by the bidders, and by submitting their bids, they acquiesced in its terms and conditions.

### III. ISSUES AND HOLDINGS

Two issues are presented by these motions:

1. Whether the Territorial Court has jurisdiction to entertain an action for injunction, despite the facial appearance that the amount in controversy exceeds its jurisdictional limit of $200,000, where the contract is divisible, and where none of the divisible portions exceeds its jurisdictional limit.

2. Whether the Territorial Court has jurisdiction to entertain an action for injunction, despite the facial appearance that the amount in controversy exceeds its jurisdictional limit of $200,000, where the contract is illusory and where an equitable controversy exists.

The court answers both issues in the affirmative and holds that in both situations it has subject matter jurisdiction to entertain an action for injunction.

### IV. DISCUSSION

 When the jurisdiction of a court is questioned, the court has the power to determine the jurisdictional issue. State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563 (1939). Although the Permanent Injunction in favor of plaintiff has already been issued, the motion to dismiss is timely because the question of subject-matter jurisdiction may be raised at any time. Id. at 567. See also, Rules 12(b)(1) and 12(h)(3), Federal Rules of Civil Procedure. Subject matter jurisdiction is a fundamental and nonwaivable requirement which must be fully considered by a court whenever

62

a possible lack of jurisdiction is brought to its attention. Godfrey v. International Moving Consultants, Inc., 18 V.I. 60 (D.V.I. Christian, J. 1980). Thus, a court may review evidence submitted on the issue to determine if subject-matter jurisdiction, in fact, exists. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 1011 n.4 (1947).

## A. *Divisibility of Contract*

■■ A divisible contract is one that is composed of independent parts, the performance of any one of which will bind the other party pro tanto. Integrity Flooring v. Zandon Corporation, 32 A.2d 507, 509 (1943). See also, Chemetron Corporation v. McLouth Steel Corporation, 381 F. Supp. 245 (D.C.N.D. Il. 1974). Whether a contract is entire or severable is a question of intention of the parties ascertained, if possible, from the reasonable interpretation of the language used. Burger King Corp. v..Family Dining, Inc., 426 F. Supp. 485, aff'd 566 F.2d 1168 (D.C. Pa. 1977).

■■ In addressing plaintiff's claim of divisibility of contract, both the conduct of the parties and the language of the bid documents must be considered. The primary inquiry in determining whether a contract is entire or severable is whether the language employed in the contract clearly indicates the intention of the parties. Absent such clear indication, we are obliged to seek additional aids. Continental Supermarket Food Service, Inc. v. Soboski, 232 A.2d 216 (1967). Since the Government admits that it cannot order meals more than one day in advance, and since the practice has been to order meals daily and to pay for them monthly, the court concludes that there is merit in plaintiff's contention that the supply contracts are divisible, based on this periodic method of executing the contracts. In essence, by virtue of this method of operation, contracts are consummated monthly, none of which exceeds the jurisdictional limits of this court.

In Burger King Corp. v. Family Dining, Inc., supra, the court held that the requirement that the franchisee open ten new restaurants during the first ten years of the agreement was a condition subsequent; and that therefore the contract was intended to be entire rather than severable or divisible. It was evident that Burger King Corp. (the franchisee) had a contractual obligation to open ten new restaurants, in exchange for an unequivocal promise of territorial exclusivity for ninety years, and as such an entire enforceable contract existed. The court in Burger King Corp. also found that the fact that performance of the contracts may occur

63

in installments does not mean that the contract is divisible, where the obligation to perform is established. However, where, as here, the Government has no obligation to order any meals, the proposed contract becomes divisible because enforceability is triggered only when meals are in fact ordered, prepared, delivered and accepted on a periodic basis.

■ A contract may be entire in the sense that there is but one agreement covering all the terms, and divisible in the sense that performance is divided into different groups. By agreement express or implied the parties may render divisible a contract which as originally drawn in the first instance was entire. See, Hudson v. Wylie, 242 F.2d 435 (9th Cir. 1959). In effect, the new language of the invitation to bid made the contract divisible. According to the Restatement (Second) of Contracts § 183, the concept of severability or divisibility is a technique with which a court can mitigate the harshness of a rule that bars a party from enforcing an agreement, by apportioning the performance into parts and then enforcing the agreement ás to only one part. Here, since the prospective contracts are deemed divisible the amount for each apportioned part, i.e. monthly, does not exceed the jurisdictional limit of the court. Even though the monthly amount cannot now be determined, since it is unknown whether the Government will order, or if it does order, how much it will order, the lack of legal certainty with respect to that valuation cannot establish that this court lacks jurisdiction.

■ Thus, even if as movants contend, there is a contract in issue instead of the bid award, the matter still falls within the jurisdictional limit of this court at this time. Only if the terms are changed by agreement of the parties to obligate the Government to order the meals, would the motion to dismiss be appropriate. Until then, the contract is divisible, and since the movants have failed to establish that any of the divisible parts of the contract exceeds the jurisdictional limits of this court, their motions to dismiss must be denied.

B. *Illusory Contract*

1. *Validity of Bid Awards*

When plaintiff filed this action for injunction, the only issue facing the court was the validity of the bid awards. In other words, the issue was whether the government complied with the procurement laws in general, and the preferred bidders law in particular,

when it awarded separate bids to supply meals for the elderly in St. Thomas and St. Croix. In ruling that the government had failed to comply with the preferred bidders law, it was not necessary for this court to deal with the validity or the potential valuation of the prospective contracts that could possibly result from the bid awards. Thus, it is clear that the court was exercising its equitable jurisdiction, and was in no way dealing with issues of contract validity or valuation.

██ ██ This court has original jurisdiction, concurrent with that of the District Court, in all civil actions wherein the matter in controversy exceeds the sum of $500 but does not exceed the sum of $200,000. 4 V.I.C. § 76(a). The term "civil action" is universally construed to include both actions at law and suits in equity. See, Homer v. Lorillard, 6 V.I. 558 (1967); see also, Bolling v. Comm., 14 V.I. 111 (1977). Thus, this court has original equitable jurisdiction not only where the matter in controversy has a valuation that does not exceed $200,000, but also where the matter in controversy has no monetary valuation. Thus, where, as here, no contract has been consummated and therefore neither its validity nor its valuation is in issue, the court may exercise its equitable jurisdiction to determine the validity of the bid awards.

At the time of the awarding of bids no contract exists between the successful bidder and the government. Indeed, the language of the bid documents contemplate the execution of a supply contract subsequent to the bid award. Thus, at the injunction hearing contract validity and valuation were not in issue, as evidenced by the fact that Plaintiff's Exhibit #1 indicated no monetary valuation, and none was needed for the decision on the injunction. But assuming arguendo that the supply contract was in issue, the amount in controversy would still not exceed the $200,000 jurisdictional limit of this court not only because the contract is divisible but also because the contract is illusory.

██ It is a well-established common law rule that in order for an agreement to constitute an enforceable contract there generally must be a bargained-for exchange, called consideration. Tradewinds, Inc. v. Citibank, N.A., 20 V.I. 152 (D.C.V.I. 1983). The Restatement (Second) of Contracts § 71 (1981) defines consideration as follows:

> (1) To constitute consideration, a performance or a return promise must be bargained for.

(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

(3) The performance may consist of

(a) an act other than a promise, or

(b) a forbearance, or

(c) the certain, modification or legal relation.

In the case at bar, the successful bidder promises to provide an estimated number of meals for St. Thomas and St. Croix, as well as to comply with other specifications set forth in the bid documents. On the other hand, the Government promises nothing. Indeed, it limits its possible future obligation to pay only for those meals *"ordered, prepared, accepted and delivered."* In reality this is not a promise at all, since the Government may choose not to order any meals, and there is nothing the successful bidder can do about it, despite being ready, willing, and able to perform. In other words, the Government has totally relieved itself of any obligation whatsoever unless and until it chooses to order and/or accept meals which are prepared and delivered by the successful bidder. "Words of promises which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." Restatement (Second) of Contracts (1981), Comment a, § 77. They are therefore illusory.[1]

On illusory promises the Restatement (Second) of Contracts § 77 states that:

A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances unless

(a) each of the alternative performances would have been consideration if it alone had been bargained for; or

(b) one of the alternative performances would have been consideration and there is or appears to the parties to be a substantial possibility that before the promisor exercises his choice events may eliminate the alternatives which would not have been consideration.

---

[1] The case of Puerto Rican-American Insurance Co. v. Francis, 17 V.I. 87 (1980), in which the maximum liability determined the amount in controversy, is inapposite because the insurance company had no control over the incidence which gave rise to the claim by the insured. In this case, however, the government has total control over the incidence which triggers its obligation to pay the successful bidder, i.e., the ordering of meals.

Based on the testimony of the Commissioner of Property and Procurement, it is clear that the Government specifically refused to obligate itself to order any meals, or to be obligated to pay if it did not order meals. It also avoided any obligation to pay for a specific number of meals, by deliberately changing the language of the previous invitation to bid which had led to the presently pending District Court lawsuit. The Executive Secretary of the Commission on Aging reiterated in her testimony this new nonobligating policy of the Government which was intentionally worded in the bid documents. Thus, it is clear that the Government consciously phrased the language in the present documents to provide for only a unilateral promise by the bidder, with no reciprocal promise by the Government, thereby effectively changing the meaning of "minimum order" to "minimum, if ordered."

██ ██ The court therefore rejects Marriott's contention that there is a minimum number of meals which must be ordered by the government. Although a good faith requirement is implied in supply contracts, that implication cannot supersede the specific language and intent of the parties, which is understood by them. Here, the parties should have understood that the "reservation of the right" to order a minimum number of meals did not constitute a "commitment" to do so, especially in the face of the government's unequivocal exclusion from any obligation to pay for meals not ordered. The Government's deliberate aim to exclude any obligation is an honest and straightforward display of its intent. It in no way attempted to disguise its purpose, thereby exhibiting good faith from the inception, despite the fact that its forthrightness destroyed its consideration. It therefore follows that this absence of consideration renders the contract illusory and nullifies any monetary valuation which it purports to place in controversy. Thus, the equitable issue facing the court may be addressed without regard to this illusory contract. Moreover, any subsequent consummation of a contract, by the ordering of meals by the government during the contract period, cannot deny the court of its present jurisdiction in equity to determine the validity of the bid awards.

67

## 2. *Valuation*

 Where the value of a contract is in issue, the test of the jurisdictional limit is not the gross contract valuation, but what amount of that contract is actually in controversy. Meridian Engineering v. W.I. Investment, 12 V.I. 114 (D.V.I. 1975). Here, the value of a contract is not in issue, for the issue is the validity of the awarding of bids. Even if the value of the contract was in issue, the test is not the gross valuation of the contract but what amount of the contract is in controversy. And although it is possible for the gross valuation of the contract and the amount in controversy to be the same, where the gross valuation is merely prospective and speculative, it cannot suffice to establish that the subject-matter jurisdiction of the court has been exceeded. Application of Monarch Life Ins. Co., 402 N.Y.S.2d 162 (1978).

In Polard v. Polard, 177 A.2d 471 (1961), it was held that the court had jurisdiction of an ejectment action, regardless of the value of the premises, so long as any claim for money damages fell within the court's jurisdictional limit. In the case at bar there is no claim for money damages, but only for injunctive relief.

Defendants argue that the contracts are the subject matter of this action and that the minimum number of meals, when multiplied by the cost per meal, exceed the jurisdictional limits of the Territorial Court. Marriott cites Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 32 (1915) for the proposition that the jurisdictional amount is to be tested by the value of the object to be gained by the complainant. These contentions are superficial because they confuse the bidding phase with the contracting phase of the procurement process, and accept at face value a valuation based on possibility rather than probability. Moreover, it is obvious that the lack of consideration and the absence of any obligation by the government to consummate the prospective contract renders its valuation too speculative for jurisdictional purposes. "An amount in controversy may not be based on mere speculation as to future or contingent events which are possible but are not shown to be probable." Application of Monarch Life Ins. Co., supra.

Although a cursory glance at the bid documents gives the facial appearance that the value of the prospective contracts would exceed the court's jurisdictional limit, facial appearance alone is insufficient to determine valuation, especially where, as here, there is no legal certainty of the valuation for which the contract may be

68

consummated. In view of the new language of the invitation to bid, the admissions of the government defendants, the prior practice of the government not to order a substantial portion of the meals estimated, the intent and understanding of the parties, and the knowledge and acquiescence of the bidders, it is clear to the court that the Commission on Aging may refuse to order any meals, and that in such event, the Government has absolutely no obligation to pay for such unordered meals. In fact, it has been the practice of the Commission on Aging to submit orders on a day to day basis for which they are billed monthly. Thus, even if a contract were in existence, there is no reasonable basis upon which a determination can be made during the bid award phase that the cost of providing meals for an entire period would exceed the $200,000 jurisdictional limit of this court.

While there is a possibility that the Government may order the number of meals estimated, the experience of the prior contract period militates against such a probability. See, Application of Monarch Life Ins. Co., supra. Indeed, the Government's original admission that this claim did not exceed $200,000 leads to the reasonable inference that during this supply period, like the last one, they had no intention of ordering sufficient meals to exceed $200,000 in value for each contract. Moreover, the figures show that during the last supply period approximately 30% of the estimated meals, a substantial portion, had not been ordered. At best, the mere possibility is purely speculative, and cannot be the basis for determination of jurisdiction. More reasonableness or a higher degree of certainty is required.

Absent any reasonable certainty that the amount in controversy would exceed the jurisdictional limits, dismissal is not appropriate at this time. In Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 347, 97 S.Ct. 2434 (1977), declaratory and injunctive relief was sought where a North Carolina statute prohibited the display of Washington State apple grades on closed containers shipped into the state. The court found that because of the substantial sales volume in previous years and the indeterminate increase in cost of compliance with the statute, it was difficult to conclude to a *legal certainty* that such losses and expenses incurred by the individual growers and dealers would not amount to the requisite $10,000 needed to sustain the District Court's jurisdiction. Also, in Hirsh v. Jewish War Veterans of United States, 537 F. Supp. 242 (E.D. Pa. 1982), the court declined to

dismiss an action for injunctive relief for lack of subject-matter jurisdiction where dissident members of the veterans organization sought to enjoin court martial proceedings initiated against them. The District Court held that "unless it appears to a *legal certainty* that the claim set forth in plaintiff's proceedings is for less than the jurisdictional amount, the amount in controversy requirement will be deemed to be satisfied." Hirsh, supra at 243. (Emphasis added.)

▮▮ By analogy, the case at bar cannot be dismissed for lack of subject-matter jurisdiction since it has not been established to a *legal certainty* that the amount in controversy, if any, exceeds the jurisdictional limit of this court.

## V. CONCLUSION

▮▮ In view of the foregoing, this court concludes that it has jurisdiction to entertain this action for injunction, despite the facial appearance that the amount in controversy exceeds its jurisdictional limit, (1) because the contracts are divisible and none of their divisible portions exceeds the monetary limitation of the court and (2) because the contracts are illusory and an equitable controversy exists.

Accordingly, the motions to dismiss for lack of subject matter jurisdiction will be denied.

## ORDER

The court having filed its Memorandum Opinion of even date herewith, and the premises considered, it is hereby,

ORDERED, that the motions to dismiss for lack of subject-matter jurisdiction are DENIED.