514 A.2d 592

**Michael ROMANSKI**

**v.**

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY and Yellow Cab Company.**

**Appeal of PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued May 8, 1986.

Filed Aug. 27, 1986.

244

Walter S. Jenkins, Philadelphia, for appellant.

Lawrence A. Segal, Philadelphia, for Romanski, appellee.

Charles W. Craven, Philadelphia, for Yellow Cab, appellee.

Before WIEAND, OLSZEWSKI and BECK, JJ.

WIEAND, Judge:

The principal issue in this appeal is whether Prudential Property and Casualty Insurance Company (Prudential) or Yellow Cab Company of Philadelphia (Yellow Cab) became liable to Michael Romanski for no-fault insurance benefits [1] following an accident which occurred while Romanski was driving a taxi. The trial court entered summary judgment against Prudential for no-fault benefits and also for counsel fees. We affirm the judgment for no-fault benefits but reverse the award of counsel fees.

---

**1.** *See* The Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., *repealed by* Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

On March 31, 1982, Romanski was injured when the taxicab which he was operating was involved in an accident. Romanski did not own the cab but was operating it pursuant to written lease agreement with Yellow Cab. At the time of the accident, Romanski owned several personal vehicles which were insured by Prudential. Following the accident, Romanski applied to both Prudential and Yellow Cab for no-fault benefits, including reimbursement for medical expenses and lost wages. Yellow Cab denied the claim on the basis that Romanski had been an independent contractor, not an employee, and that Yellow Cab had no duty to provide him with no-fault coverage. Prudential also denied Romanski's claim, contending that Romanski was an employee of Yellow Cab, which was liable for no-fault benefits. Prudential also alleged that the policy which it had issued to Romanski excluded coverage for the taxi which he had been driving at the time of the accident. Romanski commenced an action against both Yellow Cab and Prudential, seeking an award of both no-fault benefits and counsel fees. Answers were filed, compulsory arbitration was held, and an award was made in favor of Romanski and against Prudential. Prudential filed an appeal in the Court of Common Pleas. Thereafter, Romanski filed a motion for summary judgment, which, on August 8, 1984, was granted "as to the liability of Prudential to provide no-fault benefits only." Other issues were to proceed to trial. Prudential filed an appeal in this Court, but the appeal was quashed as interlocutory because the amount of Romanski's wage loss had not been determined, the issue of Romanski's entitlement to costs and attorneys fees had not been decided, and a final judgment had not been entered. Upon remand, the amounts of the several claims were stipulated, and the trial court entered judgment in favor of Romanski and against Prudential "in the amount of $6,181.71 for medical expenses, $3,250.00 for work loss, $4,173.53 for interest; and $3,571.25 for attorneys' fees and costs for a total of $17,176.49." Prudential filed the present appeal.

"It is well established that we can sustain a summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Pa.R.C.P. 1035(b)...." *Bollinger v. Palmerton Area Communities Endeavor, Inc.*, 241 Pa.Super. 341, 350, 361 A.2d 676, 680 (1976), quoting *Toth v. City of Philadelphia*, 213 Pa.Super. 282, 285, 247 A.2d 629, 631 (1968). In the instant case, the parties are not in disagreement about the material facts. The dispute, rather, is a legal one.

■ The first issue to be decided is whether Romanski was an employee of Yellow Cab or an independent contractor. This is a question of law. *Cohen v. Government Employees Insurance Company*, 289 Pa.Super. 319, 322, 433 A.2d 86, 87 (1981). In making this determination,

[i]t is well settled that the designation given a claimant by an alleged employer is not conclusive as to whether he is an employee or an independent contractor. *Feller v. New Amsterdam Casualty Company*, 363 Pa. 483, 70 A.2d 299 [ (1950) ]. Likewise, the method of payment for his services is not determinative. *Gadd v. Barone*, 167 Pa.Superior Ct. 477, 75 A.2d 620 [ (1950) ]; *In re Blum Unemployment Compensation Case*, 163 Pa.Superior Ct. 271, 60 A.2d 568 [ (1948) ]. Nor is the fact that no provision was made for the deduction of social security or income tax determinative of the status. *Stevens v. Publishers Agency, et al.*, 170 Pa.Superior Ct. 385, 85 A.2d 696 [ (1952) ]; *Shields v. William Freihofer Baking Company*, 147 Pa.Superior Ct. 455, 24 A.2d 54 [ (1942) ].
. . . .
We have said that the vital test in determining whether a workman is a servant of the person who engaged him for work is whether he is subject to the latter's control or right of control not only with regard to the work to be done but also with regard to the manner of performing it. *Hanst v. Swartzfager*, 170 Pa.Superior Ct. 219, 85 A.2d

639 [ (1952) ]. And it is not the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one an employee rather than an independent contractor.

*Eggelton v. Leete*, 186 Pa.Super. 542, 545–547, 142 A.2d 777, 779–780 (1958). See: *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 486–487, 70 A.2d 299, 300–301 (1950); *Cohen v. Government Employees Insurance Company, supra*, 289 Pa.Super. at 322–323, 433 A.2d at 87–88; *Juarbe v. City of Philadelphia*, 288 Pa.Super. 330, 335, 431 A.2d 1073, 1076 (1981); *Turley v. Kotter*, 263 Pa.Super. 523, 529–530, 398 A.2d 699, 702–703 (1979).

In the instant case, the lease agreement between Romanski and Yellow Cab provided that in exchange for a fixed fee, Yellow Cab would provide Romanski with a taxicab for his use for scheduled periods of time each day. The agreement further provided that the taxicab would be made available at Yellow Cab's garage with a full tank of gas and was to be returned to that location at the end of the scheduled period with the gas tank full. Yellow Cab agreed to perform all maintenance and repairs on the vehicle. In the event that the taxicab broke down while in Romanski's possession, it was to be towed to Yellow Cab's garage for repairs and, if possible, a replacement vehicle was to be provided. Romanski agreed to remain a validly licensed public chauffeur; to operate the taxicab only for certified purposes within the territory in which Yellow Cab was authorized to operate by the Pennsylvania Public Utilities Commission (PUC); to use the cab only for fare-paying passengers and not for personal reasons; to provide taxicab services for all appropriate passengers; to charge passengers at the rates established by the PUC; to operate the taxicab under only the Yellow Cab trademark and in full compliance with the law; to report any accident to Yellow Cab and to the police; to maintain daily log sheets as required by the PUC; and to refrain from allowing anyone else to operate the taxicab. Romanski, like all other lessees

of Yellow Cab, had been given the option of accepting dispatch service from Yellow Cab. Romanski had decided to accept this service and, as a condition thereof, had agreed to accept all orders to pick up customers coming from Yellow Cab's dispatcher. He had also agreed to report the location of the taxicab to the dispatcher upon request. Finally, the agreement provided that Romanski was an independent contractor and not an employee of Yellow Cab. He received no salary, insurance or other benefits from Yellow Cab. He controlled his own hours, routes, manner of operation and kept all fares and tips. Romanski was also responsible for paying his own taxes, as well as his own gas and union dues. Yellow Cab reserved the right to terminate any shift if the taxicab were parked illegally or abandoned, and could terminate the lease at any time.

■ The terms of this agreement support the trial court's determination that Romanski was an independent contractor and not an employee. Although Yellow Cab required Romanski to adhere to certain regulations with respect to the vehicle, it neither controlled nor retained the right to control the manner in which Romanski worked. In view of the fact that Romanski controlled his own hours, routes and manner of operation, kept all of his fares and tips, and paid his own taxes, we conclude that the trial court correctly determined that he was an independent contractor. He was not an employee subject to control by Yellow Cab.[2] See: *Cohen v. Government Employees Insurance Company, supra.*

■ Prudential argues next that even if Romanski were an independent contractor, Prudential was not obligated to pay no-fault benefits because of exclusions contained in the policy issued to Romanski. The first exclusion upon which Prudential relies stated that coverage did "not apply to bodily injury to ... the named insured [Romanski] or any

2. Many of the requirements placed in the lease agreement, such as maintaining daily log sheets, reporting all accidents, charging specified fares, operating within Yellow Cab's territorial limits and maintaining a valid chauffeur's license, were mandated by the PUC.

relative while occupying his employer's motor vehicle...."
Prudential contends that if Romanski were an independent
contractor, he was his own employer and was driving his
employer's vehicle at the time of the accident. We disagree
with this argument. Even if Romanski could be deemed his
own employer, it cannot be said that he was driving his
employer's vehicle. Romanski did not own the taxicab.
Thus, this exclusion had no application to the instant facts.

■■■ The second exclusion upon which Prudential relies
provided that the policy did not cover "bodily injury to ...
the named insured or any relative resulting from the main-
tenance or use of the named insured's motor vehicle which
is not an insured motor vehicle." Again, the vehicle in
which Romanski was injured was not owned by him. This
exlusion, therefore, is inapplicable. Even if, as Prudential
contends, it did not intend to insure against risks inherent in
the operation of a vehicle used as a taxicab, the exclusion
cannot be expanded beyond the exclusionary language of
the policy.

> It is a cardinal principle of insurance law that a policy or
> contract of insurance is to be construed liberally in favor
> of the insured and strictly against the insurer. 44 C.J.S.
> *Insurance* § 297(c)(1). "[A]ny ambiguity in the language
> of insurance contracts must be resolved in favor of the
> insured and against the insurer." *Knauber v. Continen-*
> *tal Insurance Companies*, 291 Pa.Super. 57, 59, 435 A.2d
> 217, 218 (1981).

*Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392,
409, 504 A.2d 896, 905 (1986). See: *Allstate Insurance Co.*
*v. Heffner*, 491 Pa. 447, 455, 421 A.2d 629, 633 (1980).
Inasmuch as the policy issued to Romanski by Prudential
did not specifically exclude injuries sustained by Romanski
while he was operating a taxicab, we will affirm the order
of the trial court entering judgment in favor of Romanski
and against Prudential for medical expenses, work loss and
interest.

■■ It cannot be said, however, that Prudential's denial
of Romanski's claim was without reasonable foundation;

there was, in this case, a genuine issue as to Prudential's liability for no-fault benefits. We are unable to discern that Prudential's denial of liability was made in bad faith. See: *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981). Therefore, the award of counsel fees must be reversed.

The judgment is modified by reducing the amount thereof to $13,605.24. As so modified, the judgment is affirmed.